Court. I asked the court to consider in this specific set of circumstances about Graham Dyer that the extent of his crime, if there was any, was potentially trespassing at a middle school. A situation where if he had been in a normal frame of mind, the police would have likely just said, leave, go home, go somewhere else. But he was in a crisis. The very fact that he was in a crisis was the reason that they took him into custody, that he was in a medical and emotional crisis that was obvious and of which they were aware. And so I think that's important to consider in this case because you're talking about someone being detained for something that is not really substantial criminal activity. Right, so as I understand it, there's a 12B6 on the paramedics and there's summary judgment on the officers. Yes, Your Honor. Okay, so I'm focusing on the paramedics, which obviously was dismissed by the judge, district judge, on the pleadings. I'm looking at your, I guess, the live complaints, the amended complaint. Yes. With respect, so you're alleging, or the counsel, the complaint is alleging that, I'm reading from the amended complaint at page 11, paragraph 48, Graham was in the custody of the police and had sustained a visible and serious head injury. The paramedics were aware he had ingested LSD, was incoherent and screaming. So I guess the district judge said, these pleadings don't make your case with respect to medical indifference. They were dismissed on the pleadings. I guess, what is your key argument on that? Why do those pleadings rise to the level, make allegations, no, we have to accept them as true. Why do they show the deliberate indifference of the paramedics who did, I expect you'll concede, examine the defendant? Your Honor, I don't concede that. They, when the paramedics arrived, they went first to Mr. Carpenter, the other young man that was there. You need to be careful and stay within the confines of your operative complaint. Yes, sir. For example, I mean, I'm looking at paragraph 48. It says Graham Dyer was examined. For a period of less than two minutes. So they looked at, it depends on how you define examine. The paramedics looked at him, but they didn't, for example, if you look at, I believe it's paragraph 30, it states that there was no report or certainly that the city could not find any report. So the paramedics didn't even bother to record any examination of Graham or record any vitals or provide any report or anything else. There was absolutely, there's no record whatsoever that they even examined him at all. And that's in the complaint. Well, let me ask you this then. So you, I assume, I take a lot of your argument to rest on the, this allegation that he had a head injury, right? He had a, he had a head. That's what you allege. He had a head injury. And very visible overdose. Yes. Okay. Head injury plus overdose. But you also go on to allege in great specificity, uh, all of the thrashing and the, and the, um, you know, the, the beating of the head, banging of the head in the police car on the way to the jail. So how am I to understand an allegation against the paramedics who, who show up, you say, okay, he had a head injury at that point. They examined him, they sent him away with the police officer. And then all of this other stuff happened relating to the head injury. I'm just trying to figure out, you're alleging while the police officers ignored all of the head banging in the car. I get that. That's what the, with respect to police officers. Then I'm trying to square that with the allegation that, well, he had, he had a head injury, the paramedics examined him and then let him go. I'm trying to understand how those two work together in terms of a medical indifference claim. It's our contention that the overdose is actually more significant than the visible signs of a head injury. With respect to the paramedics? Yes, with respect to the paramedics. Uh, because... But you will concede he did not die of an overdose, right? Did not die of an overdose. However, the, the, the, the, um, severe injury, including self-harm, is a highly predictable consequence of a drug overdose. But how could the paramedics be responsible for any self-harm that occurred in the police car? They, because if the paramedics had taken him in an ambulance and transported him to the hospital, he would have, first of all, been put in a gurney and strapped down. And he would have been taken to the hospital and sedated. He would not be in the back of a police car slamming his head 50 times into the cage in the side of the car. So the, the, the fact of the drug overdose is linked to the highly predictable consequence of harms that occur as a result of a drug overdose. Not the fatality of the drugs themselves, but the conduct of the person that is experiencing the overdose. My concern would be if we reversed on the 12B6 as to the paramedics, would we be saying, in essence, if you have an allegation of a head injury plus drug overdose, paramedics going to be deliberately, deliberately indifferent, at least at the, at the 12B6 stage, if they don't order him to go to the hospital? I believe that that's accurate. I believe that paramedics should be held to a standard that would require them, if there's a visible drug overdose, to transport someone to the medical. They may or may not be required to do that as a matter of negligence, but we're talking about deliberate indifference to medical. Yes, yes. There are, there are cases that address paramedics. I guess, what's your best case that would guide a paramedic to do that under these circumstances, the most closely factually analogous case? There are some other circuit cases. With, with respect to Texas cases, there is a case, Warren v. City of San Antonio. It's a, it's a Westlaw citation, 2007 Westlaw 9702821, where the paramedics were called to the home of a gentleman who had fallen and said that he couldn't feel his feet. And their response to that was to put him in a chair and try to roll him out and put him in his own car. They said they weren't going to transport him. He ends up at the hospital. He ends up, they determined that he had a severed spinal cord and he ends up dying. And the court in that case said that reasonable paramedics would have known, in light of the very real potential of a serious injury, that what they did posed, that there was a risk of serious harm from that. And so... In that case, is that a, so sorry, is that our, is that one of our decisions, Warren? It is not a Fifth Circuit decision. I don't know of a Fifth Circuit decision that is directly on point with the facts relating to the paramedics. So what I was going to ask you then, in that decision, regardless of how much weight we should give it, was there the intervening issue here, which is, well, the officers then took him and put him in a car and allegedly just ignored the fact that he was beating his brains out. Yes, and our contention is that if the paramedics had not ignored the serious risk that his condition posed, that he wouldn't have been in the back of a police car. And so, the, we did plead that the failure to transport in an ambulance strapped in a gurney of Mr. Dyer was the indifference to a serious risk of injury. I believe that the, and I believe that we pled that the paramedics would be expected to understand serious risk of injury related to a substantial drive overdose. So that is with respect to the paramedics. Is there any evidence in this case, I know that paramedics 12B6, but is there any evidence anywhere that would suggest the reason he died was the self-inflicted head injuries? Yes, and I believe that's, I'm not sure if that's in the pleadings or in the summary judgment evidence, but I know it's at least in the summary judgment evidence that when he was transported to Baylor Hospital, it was the severe head injury that caused his death. That's the way I understand the summary judgment. Yes, yes. And it's not that we can pinpoint any specific point in time that there was the fatal blow to the head, but you only have to watch the video of him in the back of the car. So hard that the car shook. Who were the officers in the car? Officer Heidelberg was driving the car. Officer Gafford was behind him and Officer Scott was behind him. So those are the three that have been the focus of the appeal for that reason. So Heidelberg was driving the car. Yes. Is somebody in the car with Heidelberg besides? No, just Officer Heidelberg. Just Heidelberg. And then Officer Gafford was behind him and Officer Scott was the third car. But Officer Heidelberg did pull over at some point on the way to the police station and Officers Gafford and Scott also pulled over and then they all went to do whatever, you know, to encounter Graham in the back of the police car. So at that point, they were all... Heidelberg, Gafford, Scott are the officers that are sort of involved in the transport to the jail after paramedics. Yes. Who takes them out of the car? They all pulled up into the sally port and kind of gathered around. It was Officer Heidelberg that went and opened the door and basically pulled him out onto the ground. He never... From the moment they put him in the back of the police car, he never walked again. They pulled him out, then they picked him up and they carried him into the jail and they put him in a restraint chair and then put him in the cell. You don't have video of that, right? Where does the video stop? The video stops with him in the cell in the restraint chair. So there is video of the sally port carrying him into the jail, the entire scenario. Have you abandoned your claim against Hudson? Houston? Sorry, Houston. We did not include Officer Houston in the appeal, mainly for the reason that he did not go to the police station. He wasn't involved in the pullover. My question is simple. Yes or no? Yes. Yes. Yes. Yes, the claim as it currently exists is with respect to Officers Gafford, Scott and Heidelberg. Thank you. And with respect to those officers, I think that each of them admitted in their depositions and it's part of the summary judgment evidence that they were aware of the risk of the harm from the drug overdose. They were aware that he was harming himself. They were all aware that he was slamming his head in the car. And whether or not they get a pass for calling the paramedics and having the paramedics check him out, that, which we contend they don't for a number of reasons. But even if they did, that would end at the time they put Graham in the back of the police car and transported him to the jail. And they never, they didn't even, not only did they not call the paramedics back or take him to the hospital or get him medical help, they didn't even tell the jailers that he had been slamming his head inside the police car. With respect to the officers' qualified immunity, what is your best case or cases that should have informed those officers that failure to seek medical care was unconstitutional? What are your best cases for that? Well, Your Honor, I believe that it's been established for a very long period of time that failure to obtain medical care is a constitutional violation. We have to be a little bit more specific than that, right? Well, I would say the recent case of Garza versus the City of Donna where they, where the court addressed the issue of intent and whether or not there's that, there's that extra requirement. Garza is after this incident, isn't it? That's true, it was after this incident. There are, I mean, there are a number of cases that we cite that establish the right to medical care. I did not know that there was going to be any issue about whether or not that right was clearly established. Well, no, understandably, I mean, so the district court . . . I guess I'd like to hear your response to the specific rationale on which the district court denied qualified immunity, which as I understand it, the district court said, well, there's confusion in Fifth Circuit law with respect to this alleged third element. And so therefore, they have to have qualified immunity. Well, so my reading of that was that the court said that, the judge said she was not going to include the intent, that there was an intent to harm. But she said that the, our cause of action was doomed, was the word she used, because she said the right was not clearly established because of the confusion around whether or not there was an intent requirement. I don't think that that is the way that that should be analyzed, because what, what we're looking at with whether or not it was clearly established was the right to medical care, not whether it was clearly established that the . . . There was no absolute right to medical care as far as a constitutional violation. Right, Your Honor, which, which is why, which is why I take issue with the district court's analysis is that what she said was that there, the confusion over whether or not the officers had to intend the harm doomed the, doomed the cause of action. And I don't think that's the correct focus. I think the correct focus is on whether or not there was a right to medical care that was clearly established. And the intent is irrelevant to, to the clearly established aspect of it. Thank you. May it please the Court. My name is Joe Tooley. I represent the appellants in this case. Appellants or the appellees? Appellees. I'm sorry, Your Honor. It's been a long day. There are two rulings before the Court in this appeal. The district court's granting of the 12B6 motion for the paramedics on the medical intertention claim, and then the district court's granting of the summary judgment motion for the officers on the medical intertention claim. Now, as the Court may notice in the, in the record, there was a forced claim in this case, and the forced claim was settled against all defendants. Not all defendants in the district court are before the Court on this appeal. In fact, Sergeant Houston was named as a appellee, and it's our contention as... He's not in the case anymore. She's abandoned. It has been abandoned, Your Honor. On the 12B6 motion of the paramedics, the plaintiff's plea, the amended pleading, simply pled that the paramedics examined Mr. Dyer, that he was on the ground, handcuffed, and that they were aware that he had taken LSD. And then serious head injury. I'm sorry? They were aware of a serious head injury, too, right? They were aware that he had, that his companion had reported he had taken LSD. No. The term overdose has been... I get that, but they also, they plead that he had a serious head injury, and the paramedics saw that. The paramedics saw the serious head injury. There are no factual allegations regarding that injury, other than it was characterized as serious. However, the evidence in the case... I'll read you from the complaint. It's paragraph 48 of the complaint. At that time, Graham was in, so this is right after, this is right after he was examined by Paul Polish and Joe Baker. Those are the paramedics, right? And then paragraph 48 goes on to say, at that time, Graham was in the custody of the police and had sustained a visible and serious head injury. So I guess my question then is, in light of that allegation, does that sufficiently plead deliberate indifference to his medical needs, given the fact that the paramedics didn't order him taken to the hospital? It does not, Your Honor. The facts as to why the alleged head injury was serious are not presented. And what more did you want them to allege there? I'm sorry? What more do you want them to allege? They could have described the injury, if it were a head injury where the skin was broken, or just, as the record shows later, just a bump on the head. It's great. Yeah, but if we have to go, paramedics were dismissed on 12b-6, though. They were dismissed on 12b-6? Not summary judgment. Right. So the later evidence was not before the court on the 12b-6. It's simply, they alleged an injury without describing the injury, without factually supporting that in the pleadings and in the record. Now, the plaintiffs took issue with the extent of that examination and the results of it, but they did examine him. Therefore, that brings their claim down to mere negligence, which does not support a cause of action under the 14th Amendment for medical inattention. And I would suggest to the court, this issue has not been briefed in this case, but when you have paramedics involved responding to a prisoner in custody and you have a medical inattention claim under the 14th Amendment, there's a tension that arises between that and the notion that there is no constitutional right to receive emergency medical care. The only reason Mr. Dyer had a constitutional right in question is the fact that he was in custody by the police officers. The paramedics didn't arrest him. Again, that's a tension that arises, and it arises from the case of, it's a district court case of Handley v. City of Seagoville. I'll give the site to the clerk here in a moment, Your Honor, if I can find it. 798 F. Supp. 1267, and that was Judge Barefoot Sanders when he was on the district court. Regardless, Your Honor, the pleadings against the paramedics that were before the court under the motion dismissed are not sufficient to support the claim, to support the elements that the paramedics had subjected knowledge of a serious medical need and disregarded that knowledge or disregarded that need. The paramedics examined him. They told the officers, we can't take him. Now, there's a dispute in the record about whether to say we can't take him or we can't check him, but the officers... It seems undisputed to me, well, again, we're talking 12B6, but they didn't take him to the hospital. They didn't take him. They sent him off with the cops. I mean, that's... Well, they didn't take him, and the officers construed that, again, they construed that as being clear, but that came up later. What is in the record as to the relationship between the paramedics and the county or the police department? Were they county employees? They all worked for the city of Mesquite, Your Honor. These were city of Mesquite police officers. Paramedics worked for the Mesquite Fire Department. And that's in the record? I'm sorry? Is that in the record? It's undisputed. I believe it may be in the plaintiff's pleadings, Your Honor, but it is... Well, it would have to be in the complaint for purposes of the 12B6. I think it would be in the plaintiff's pleadings. That's paramedics who were employed by the city of Mesquite. With respect to the officers, now we're in summary judgment territory with the officers. Now, I'm looking at the district judge's summary judgment opinion, the order, at page 19 of that order, and I want to read you something. It says, she says, the video evidence also shows Graham repeatedly and forcefully bashing his head against interior surfaces of Officer Heidelberg's police car. Now, in light of that, I assume you concede that a reasonable, a rational jury could find from this evidence that Mr. Dyer was bashing his head against the interior of a police car, and at least Officer Heidelberg was aware of that, right? A jury could find that. Your Honor, this occurred at nighttime. It was dark in the back of that car. He was driving. Officer Heidelberg was driving. He couldn't see what was going on back there. He could hear it. He could hear the noise going on, but he's driving his car at night. Well, Officer Heidelberg testified that he could hear Graham hitting his head and pulled over on the way because he was worried that Graham was harming himself. So there's some re-judgment evidence that at least Heidelberg was aware that Dyer was in the back seat of the car beating his head against the car, right? Correct, Your Honor. Okay. I would point out that the record establishes that Mr. Dyer's demeanor, his actions, remained unchanged throughout this proceeding. He was encountered at the school. Paramedics examined him. Then he was transported to jail where he was put in a restraint chair. Well, do you concede that there's some re-judgment evidence from which a jury could find that the reason he died was self-inflicted banging of his head in the police car? I'm just asking if a jury could find that. The autopsy report said he died of a head injury. How he received that head injury is not described. Okay. So, I mean, are you contesting . . . So as I understand the district judge's summary judgment order, she found that there is a fact issue as to, you know, whether there's a medical indifference claim here, that a jury could find that. She granted qualified immunity on the second prong. Is that my understanding of the order? She said, well, there's no clearly established law that showed the police officers that they should have done anything to help him out. The standard on qualified immunity is it must be clearly established beyond debate that the officer's conduct was unlawful. Therefore, it must be clearly established that the legal standards which define that conduct is also established beyond debate. Judge Boyle found that that was not the case. She found that there was confusion in the Fifth Circuit opinions, in the Fifth Circuit case law, which was compounded by the plaintiff's allegation that Kingsley should have applied an objective standard. Judge Boyle found two additional standards in the Fifth Circuit case law, that the deliberate indifference must be supported by a subjective recklessness and an intent to harm, or the third standard, that the deliberate indifference must be supported by a subjective recklessness without intent to harm. Let me give you a hypo. Suppose the police arrest somebody, and it turns out that the person is bleeding out when they arrest him. And he tells the police officers, I am bleeding out. I'm afraid I'm going to die. Help me. And the blood is gushing out from him. And the police's response to that is to chain him to a chair. Now, is that a deliberate indifference claim? Is it clearly established that the police officer shouldn't do that? In a situation like that, Your Honor, I think if I strap a suspect who's bleeding out to a chair and actually prevent him from getting medical attention, I think that's going to meet all three standards. Okay, so how is this case different, at least from the perspective of a jury who could find the facts? How is this different? Here, Your Honor, Mr. Dyer had taken LSD. His behavior was as described in the video. The officers called the paramedics to check him. The paramedics said, we're not going to take him. So the officers take him to jail. His demeanor remained unchanged after those paramedics checked him. Right, but I just pointed to summary judgment evidence that showed that he was beating his head against the interior of the police car, and the officer knew it. Right? That's after the paramedics said, okay, to take him. The officer suspected it, Your Honor. He could not see it from where he was. But he did stop the car. He stopped the car because partly they thought this prisoner had slipped his restraints. And they stopped, and that's supported in the record by Gafford's testimony, by Heidelberg's testimony. They thought he'd slipped his restraints because he was thrashing around so much back there, so they had to check that. Turns out he hadn't slipped his restraints. He was banging his head around. But they didn't know that at the time. Gafford could not see that. Heidelberg was driving the car, looking forward. The video that's referred to was not viewed by Heidelberg. He did not see that. He could have seen it if he had chosen to look at the video instead of drive his vehicle, but he had to drive that car. You don't think the rearview mirror showed any of that? You can't see in the backseat with the rearview mirror, Your Honor, not with that screen in that cage back there. Is that what's in the record? I'm sorry, Your Honor? That's what's in the record. Did the officer say, I couldn't see because of the dark in the screen? He didn't describe. He wasn't questioning as to why he couldn't see. He simply said he couldn't see. And I think common sense at nighttime when you're driving your vehicle at night, you're not looking in the backseat. Common sense doesn't go very far in summary judgment. It either is in the record or it's not in the record. The record reflects he didn't see him, Your Honor. Well, Judge Boyle wrote on page 19, Officer Heidelberg also twice told Graham to stop hitting his head before pulling over and testify that he was aware that Graham could have sustained a head injury. Now, I mean, there's a record citation to the summary judgment appendix. Is that wrong? It's not, Your Honor. He was aware that somebody could injure their head by hitting it on the cage. He told him not to stop banging his head. He told him to stop banging his head. He knew he was banging his head. He suspected that, Your Honor. What does the evidence show that Mr. Dyer's state was when they got to the police, when they got to the police department in the Sally Port and they were taking him out of the car?  What does he say? Which is in the record. I'm going from memory here. Gafford's deposition is found in the record at pages 551 through 685. What is it? Because he was there, Scott was there, Heidelberg drove the car. Heidelberg was the transporting officer for Mr. Dyer. And Gafford and Scott were both there when they got to the Sally Port. Gafford was a backup officer. Scott was transporting the other person who was arrested. All three of them went to the Sally Port. Did they all three take him out of the car? Dyer out of the car when they got to the police office? Gafford did not, Your Honor. I believe Scott and Heidelberg assisted with the jailers who came out and assisted to remove him. What does the record show happened from taking him out of the car to putting him in the jail cell? They laid him on the ground. They decided what to do with him. The jail supervisor decided he's going in the restraint chair because he'd been fighting. He'd already injured one officer. They were going to put him in the restraint chair. Again, his demeanor continued until he was in the restraint chair. What do you mean demeanor continued? What kind of demeanor? Fighting, yelling, basically. The officers had to hold him. It took several officers to get him in because they were having to hold him. He didn't kick or hit or bite any officers while they were carrying him inside the jail because they all had a hold of him. He couldn't. And he weighed 100 pounds. I'm sorry, Your Honor? The record, the complaint said he only weighed 100 pounds. And he was about 5 feet tall. I don't know how much he weighed, Your Honor. I know when you've got even a small person, when they're in this state, this drug-induced state, they can hurt you. I think the record also reflects that some of the officers, maybe you can tell me which ones, left the police station after he was put in the restraint chair to go to 7-Eleven or something to get a drink? I think it was Heidelberg and Scott. They either went to a 7-Eleven on break or they went elsewhere in the station to do reports. When does the record reflect that they received a call that Dyer is going to the hospital? They were called in by the station because Dyer became unresponsive later. How long was that after they put him in the restraint chair? I think it was an hour or two. But subsequently, paramedics came again. When they did transport him to the hospital, since he was in custody, some officers had to go with him, and they did. And these officers were still on duty.  Regardless, Your Honor, our position is the 12B6 of the paramedics was properly granted because the pleadings are simply inadequate to establish subjective knowledge of a serious medical risk and the paramedics purposely ignoring that knowledge. The summary judgment as to the officers, Scott, Heidelberg, and Gafford, was properly granted, because the facts as to each of them, and again, the facts as to those officers must be reviewed individually. Gafford only observed a scrape or a contusion on the head. That was the only injury he ever saw. Heidelberg saw the abrasion on the head, which he described as non-serious. What time period are we talking about an abrasion on the head? Was that when he was first arrested? Well, when he was first arrested is when they saw it, and, of course, the abrasion was still there throughout. It didn't go away. That was before the head banging in the car. That's correct, Your Honor. They were aware that he was banging his head in the car. They were not aware and did not see any additional injury resulting from that. What does the medical report reflect he died of? I'm not enough of a doctor to give you the medical report. Not an overdose of LSD. He died of a head injury. It did not say when that injury occurred, and there are indications in the record that he received a head injury, possibly, before the officers even encountered him, and that is found in the record. It's the statements from the witnesses that were taken by the police department after this incident occurred. That's causation. That's not qualified immunity. I'm sorry, Your Honor? That goes to causation, not qualified immunity. Exactly. It does go to causation. And, again, the qualified immunity issue, as Judge Boyle recognized, the confusion as to the legal standard prevents the standard from being clearly established and, therefore, prevents anyone from overcoming the qualified immunity. That sounds a little bit like because there's allegedly confusion in our case law, there's always going to be qualified immunity in a medical indifference case. That's the way I would read it, Your Honor. Well, aside from that point, do you have a case from the Fifth Circuit or the United States Supreme Court that shows that what the officers did under these circumstances is really on the good side of the constitutional line? I don't have that case, Your Honor. Again, it's not clearly established. A case on point does not exist. I guess I understand it's not your burden to do that, to give me that case, but it would be helpful. Okay. But I do not have such a case, Your Honor. Thank you. Thank you. Ms. Hutchinson, I could be wrong, but I don't have in my file a reply brief by you. Did you file one? No, Your Honor. And why not? I didn't think that there was anything left to say, Your Honor, to be honest with you. I briefed it and rebriefed it and addressed all of the issues, and I didn't have anything to add. So you felt nothing he said in his brief was worth needing to be responded to? I felt like it had been addressed in our appellate brief, Your Honor. All right. If I were writing the opinion the way that you would like it to be written, should we say that when a defendant or someone in custody bangs their head that it's deliberate indifference if you do not take them directly to a medical facility? I think it would say that if someone banged their head 50 times in the back of a police car so hard that it shook the car from side to side and you could hear it smacking into the car, and when you arrived at the sally port, that person laid on the ground and continued to bang his head but was unable to walk, that, yes, it would be deliberate indifference not to take him to the hospital or seek immediate medical care or at least inform the jail. And it may be some adult also add that the person was in the grip of an LSD psychosis at the time. In the grip of an LSD psychosis, he's bleeding, he's sweating. I would like to point out a couple of things that Officer Heidelberg, at several points while he's driving, was saying, quit hitting your effing head, and that's why he pulled over. And that Officers Scott and Gafford both testified that when they saw the car moving around, they knew that he was hitting his head and that when he pulled over that that's what they were going to address. We can get that from their depositions and the video evidence. Yes, and it's in our brief with specific references to the record on appeal where Officer Heidelberg said that him hitting his head was what prompted him to pull over, record on appeal 716. He was aware that it could cause a head injury, record on appeal 717. His intent for pulling over was to try to stop him from continuing to hit his head, record on appeal 717, and that the other officers acknowledged that that's what they were doing when they pulled over was trying to stop him from hitting his head so hard that it was obviously going to cause some kind of injury. I truly don't know how you could see and hear what Graham did in the back of that police car and not conclude that he was inflicting severe injury upon himself. And then getting to the sally port, and again that's in the record that when they got to the sally port, they pulled him out of the car and Officer Scott stepped on his head with his foot because Graham was continuing to beat his head on the floor, on the concrete in the sally port. He was still conscious and fighting as counsel said. Well, he was still conscious when they got to the sally port. He was still conscious at that point, but you can see on the video, and it's in the record, that at that point when they picked him up and they carried him in, and he was sort of still making noises, but he was not physically moving. Is there anything in the record that reflects how long after he was put in the restraint chair  I apologize, Your Honor. I think it was a period of approximately an hour or so that they then, that someone who was observing on the camera noticed that he was not moving and they called the paramedics who came in and then transported him. On the motion for summary judgment, qualified amenity for the officers, I haven't looked at the papers in the district court, but was this idea that the Fifth Circuit law is confused and therefore there's no clearly established law, that must have been raised. I don't believe the district court raised that sua sponte. Was that raised by the defendants? Your Honor, that was not raised. But what the district court, I believe, addressed it because we raised the Kingsley opinion. I just want to know how this all came about, and you're saying you don't even believe the defendants raised that point? I do not believe that the defendants . . . So you didn't brief, no, there is no confusion in the Fifth Circuit law, if you'll go back to the seminal cases. I knew that there was some fuzziness about the intent aspect of it after Kingsley, but what I didn't know was that that was going to be used to say that the right to medical care was not clearly established at the time. I thought they were completely separate issues. One is, do you have to show the officers intended to hurt him? And the other one is, was it clearly established that someone is entitled to medical care if there's a known serious risk of harm, which I believe was clearly established. So it was my opinion that those were separate issues until we got the district court's opinion merging those two things. So thank you for your time.